UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRIE JONES,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | ) Case No. EDCV 08-1620 JC<br>)<br>)<br>) MEMORANDUM OPINION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I. SUMMARY

On November 19, 2008, plaintiff Terrie Jones ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; November 25, 2008 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or about November 18, 2003 and December 22, 2003, plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 13, 59, 215, 216). Plaintiff asserted that she became disabled on February 5, 2002, due to panic attacks, anxiety, depression, and carpal tunnel syndrome. (AR 65-66). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on June 20, 2005 ("Pre-Remand Hearing"). (AR 231-52).[2] On November 7, 2005, the ALJ determined that plaintiff was not disabled through the date of the decision ("Pre-Remand Decision"). (AR 13-19).[3] On January 20, 2006, the Appeals Council denied plaintiff's application for review. (AR 5-7).

Plaintiff thereafter sought judicial review (Case No. EDCV 06-158 JC), and the case was remanded for further administrative proceedings on March 2, 2007. (AR 325-34). On March 26, 2007, the Appeals Council, in turn, remanded the case to the ALJ. (AR 335-36). The ALJ held a supplemental hearing on July 30, 2007 ("Post-Remand Hearing"). (AR 271-87).

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] The record contains a duplicate copy of the transcript from the Pre-Remand Hearing. (AR 298-319).

[3] The record contains duplicate copies of the Pre-Remand Decision. (AR 291-97, 408-14).

On August 10, 2007, the ALJ, who incorporated by reference the Pre-Remand Decision, again determined that plaintiff was not disabled through the date of the decision ("Post-Remand Decision"). (AR 263-70). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: bilateral carpal tunnel syndrome, a depressive order not otherwise specified, and an anxiety disorder (AR 266); (2) plaintiff's impairment or combination of impairments did not meet or medically equal one of the listed impairments (AR 266); (3) plaintiff could perform medium work with some exertional and non-exertional limitations[4] (AR 15, 267); (4) plaintiff could perform her past relevant work as a companion, title insurance examiner/searcher, and crew support technician for the railroad (AR 269); and (6) plaintiff's allegations regarding her limitations were not entirely credible (AR 268).

On September 17, 2008, the Appeals Council denied plaintiff's application for review. (AR 253-55).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[4]Specifically, the ALJ determined that plaintiff could perform medium work except for no constant grasping, gripping, torquing, or fingering with the bilateral hands and no constant interaction with the general public. (AR 267).

3

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal

error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.  DISCUSSION

### A.  The ALJ Properly Considered Lay Witness Evidence

Plaintiff contends that the ALJ failed properly to consider statements provided by plaintiff's parents, Patsy and Edward Fletcher, and failed to provide sufficient reasons for disregarding such statements. (Plaintiff's Motion at 3-6). The Court disagrees.

#### 1.  Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness

who has observed claimant is important source of information about claimant's impairments); <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment) (citations omitted); <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to work).  The standards discussed in these authorities appear equally applicable to written statements.  Cf. <u>Schneider v. Commissioner</u>, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Robbins</u>, 466 F.3d at 885 (quoting <u>Stout</u>, 454 F.3d at 1055-56).

### 2. Analysis

Plaintiff's mother completed a "Function Report – Adult – Third Party" ("function report") dated February 13, 2004 (AR 86-94) ("First Function Report"), and a second function report dated June 1, 2004 (AR 114-22) ("Second Function Report").  Plaintiff's father completed a function report dated December 26, 2005 ("Father's Function Report").  (AR 500-507).  Plaintiff contends that the ALJ erroneously ignored the Second Function Report and the Father's Function Report. (Plaintiff's Motion at 3-6).  The Court concludes that a reversal or remand on this basis is not warranted.

The Court finds no material error in the ALJ's consideration of the Second Function Report.  First, plaintiff's mother's statements in the Second Function Report are either identical to, or substantially the same as those in the First

Function Report – which plaintiff concedes the ALJ sufficiently addressed in the Post-Remand Decision. (Plaintiff's Motion at 3-4; compare AR 86-94 with AR 114-22). The ALJ was not required to address cumulative statements which the ALJ had already considered at length. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (ALJ must provide an explanation only when he rejects "significant probative evidence"). Plaintiff fails to identify any significant lay evidence from the Second Function Report that is not otherwise accounted for in the ALJ's Post-Remand Decision. Moreover, the ALJ gave "little weight" to any of plaintiff's mother's statements in the First Function Report. (AR 263). When asked in the First Function Report to "[d]escribe what [plaintiff] does from the time [she] wakes up until going to bed," plaintiff's mother responded "[d]on't know." (AR 86). Since, as the ALJ noted, plaintiff's mother "was simply not in a position to know what [plaintiff] could and could not do [on a daily basis]," the ALJ properly discounted all of the mother's lay statements in the First Function Report. Cf. Sprague, 812 F.2d at 1232 ("Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence."). Statements in the Second Function Report suffer from the same infirmity.[5] Consequently, the Court can confidently conclude that no reasonable ALJ could have reached a different disability determination, even when fully crediting lay statements in the Second Function Report. Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

      Plaintiff's contention that the ALJ ignored the Father's Function Report is belied by the record. The ALJ expressly discussed the Father's Function Report in his Post-Remand Decision, noting that the father had identified some difficulties

---

[5] In the Second Function Report, plaintiff's mother again responded that she did not know "what [plaintiff] does from the time [she] wakes up until going to bed." (AR 114). In addition, plaintiff's mother stated in both the First and Second Function Reports that she saw her daughter only "[three] times a month." (AR 86, 114, 263).

suffered by plaintiff, but that the father had also acknowledged, despite such deficiencies, that plaintiff's daily activities were not limited. (AR 268). The ALJ noted that the father's statements appeared genuine and were consistent with plaintiff's own testimony regarding her activities of daily living. (AR 268). To the extent the father identified limitations, such evidence was cumulative of other evidence considered, and either properly rejected by the ALJ, or accounted for in the ALJ's ultimate residual functional capacity assessment.

In light of the foregoing, a remand or reversal on this basis is not warranted.

### B. The ALJ Did Not Fail Properly to Consider Side Effects of Plaintiff's Medication

Plaintiff contends that the ALJ failed properly to consider limitations on plaintiff's residual functional capacity related to her use of prescription medication (*e.g.*, Zoloft, Clonazepam, and Seroquel). (Plaintiff's Motion at 6-8). The Court disagrees.

A claimant bears the burden of demonstrating that her use of medications caused a disabling impairment. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving medication impaired his ability to work because he produced no clinical evidence). Here, the only evidence plaintiff points to in support of her contention is statements from her own disability reports. (Plaintiff's Motion at 5) (citing AR 102, 111, 459, 487, 496). Apart from such statements, plaintiff offers no objective evidence that her medication affected her in the way she claims, let alone that it interfered with her ability to work.[6] See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)

---

[6]Most of plaintiff's treatment records either make no note of medication side effects, or indicate that plaintiff denied experiencing any side effects. (AR 172, 177-79, 204, 207-11). The only mention of medication side effects in plaintiff's medical records appears to be plaintiff's own complaints of "weight gain" from prior medication. (AR 172, 204, 207-11). Plaintiff made a passing reference during testimony at the Pre-Remand Hearing that her medication made her "lethargic," but did not state that she was unable to work due to the fatigue. (AR 234). Moreover, the ALJ specifically found Plaintiff's testimony lacking in credibility (AR 17), a finding that is not challenged by plaintiff in this proceeding.

8

(ALJ did not err in failing to "explicitly address the drowsiness side-effect of [plaintiff's] medication" where the ALJ's residual functional capacity assessment accounted for "those limitations for which there was record support that did not depend on [plaintiff's] subjective complaints."); Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (alleged side effects need not be considered where no objective evidence supported allegations); Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (ALJ need not consider side effects that were not "severe enough to interfere with [plaintiff's] ability to work.").

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.[7]

### C. The ALJ Properly Evaluated the Medical Opinion Evidence

#### 1. Pertinent Facts

##### a. Pertinent Pre-Remand Treatment Records

Plaintiff received treatment for mental health issues at the San Bernardino County Department of Behavioral Health ("Department of Behavioral Health") from approximately November 17, 2003 to May 30, 2007.[8] (AR 172-86, 204-14, 353-64, 509-21). Department of Behavioral Health progress notes reflect that: (i) plaintiff denied homicidal and/or suicidal ideation, delusions or hallucinations,

---

[7] Plaintiff appears to suggest that the ALJ's decision is based on legal error because the ALJ failed to consider all possible side effects that can be associated with plaintiff's medication. (Plaintiff's Motion at 7). Plaintiff's argument has no merit. The ALJ was not required to address undocumented medication side effects. See Miller, 770 F.2d at 849 (ALJ properly rejected allegations of impairment from medication side effects where plaintiff produced no clinical evidence that narcotics use impaired his ability to work); Osenbrock, 240 F.3d at 1164. Plaintiff's bare recitation of all possible side effects associated with her medication is meaningless absent some evidence that plaintiff suffered any such side effects. See, e.g., Schroeder v. Astrue, 2009 WL 3707026, at *5 (C.D. Cal. Nov. 2, 2009) ("[A] simple recitation of potential side effects from a particular medication does not establish that this claimant experiences these side effects, which prevents him or her from working for these reasons.") (emphasis in original).

[8] Although plaintiff was initially assessed on November 15, 2000 (AR 180-85), medical records from the Department of Behavioral Health do not reflect that plaintiff received treatment until approximately November 17, 2003 (AR 179).

or other psychotic symptoms (AR 172, 174-79, 207-13); (ii) plaintiff was prescribed, *inter alia*, Zoloft for depression, and Klonopin for anxiety (AR 172, 204-06, 207-14, 353-58); (iii) plaintiff's medication stabilized her psychological symptoms (AR 174, 178-79, 204-05, 207-13); and (iv) plaintiff's mental status evaluations were consistently unremarkable[9] (AR 174-79, 204-05, 207-13).

### b. Pertinent Post-Remand Treatment Records

Medical records from the Department of Behavioral Health submitted by plaintiff on remand reflect that (i) plaintiff had been receiving routine outpatient treatment for depression and anxiety (AR 360-64, 509-10, 512-518, 520-21); (ii) plaintiff had no acute mental health crisis requiring inpatient hospitalization or intensive treatment (AR 360-64, 509-10, 512-518, 520-21); (iii) plaintiff's mental condition was improving in response to her prescribed medication (AR 360-64, 509-10, 512-518, 520-21); (iv) plaintiff's more recent complaints of being "a wreck" were likely due to plaintiff's failure to take her prescribed medication at the time (AR 362); and (v) apart from medication management, plaintiff was receiving no regular mental health services (*e.g.* counseling, psychological testing) (AR 360-64, 509-10, 512-518, 520-21).

### c. Medical Opinion Evidence

On March 3, 2004, Dr. Gregg, a non-examining state agency consultative psychiatrist, completed a Psychiatric Review Technique form. (AR 187-200). Dr. Gregg concluded, in pertinent part, that plaintiff had no restrictions in activities of

---

[9]Mental status evaluations conducted between November 17, 2003 and February 9, 2004 by Dr. Inderjit Seehrai, one of plaintiff's treating physicians at the Department of Behavioral Health, reflect, in pertinent part, that plaintiff was alert and oriented as to person, place, time and situation, casually dressed, with memory grossly intact, fair insight and judgment, and fair impulse control. (AR 174-79). Mental status evaluations conducted between June 22, 2004 and April 19, 2005, by Dr. William Lawrence, also one of plaintiff's treating psychiatrists at the Department of Behavioral Health, reflect, in pertinent part, that plaintiff was alert, cooperative, and oriented as to person, place time and situation, well groomed, and at times slightly anxious, nervous, happy, or sad. (AR 204-05, 207-13).

daily living, was mildly limited in maintaining social functioning, mildly limited in maintaining concentration, persistence or pace, and had no episodes of decompensation. (AR 197).

On March 3, 2004, Dr. Gregg also completed a Mental Residual Functional Capacity form. (AR 149-52). Dr. Gregg concluded, in pertinent part, that plaintiff was moderately limited in her ability to interact appropriately with the general public, but otherwise had no significant mental limitations. (AR 149-50).

On January 30, 2006, Dr. Skopec, a non-examining state agency consultative psychiatrist, completed a Mental Residual Functional Capacity Assessment of plaintiff. (AR 551-54). In the Summary Conclusions section, Dr. Skopec checked boxes which indicate that plaintiff was "moderately limited" in her ability to: (1) understand, remember and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being distracted by them; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; and (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 551-52). In the Functional Capacity Assessment section of the form, Dr. Skopec elaborated on the findings as follows: "[Plaintiff is] partially credible with MDI but overall considering the mental status exam and the ADLs, it appears that [plaintiff] can sustain simple repetitive tasks with adequate pace and persistence, can adapt and relate to co-workers and supervisors but likely cannot work with the public." (AR 553). The Functional Capacity Assessment section also contained the notation: "AGREE WITH ALJ DECISION." (AR 553).

///
///

### 2. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[10] See id.

"The Commissioner may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998). However, while "not bound by findings made by State agency or other program physicians and psychologists, [the ALJ] may not ignore these opinions and must explain the weight given to the opinions in their decisions." Social Security Ruling[11] ("SSR") 96-6p; see also 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability

---

[10] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

[11] Social Security rulings are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007).

evaluation.  Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence. . . ."); Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions.").[12]

### 3.  Analysis

Plaintiff contends that the ALJ failed to discuss the opinions expressed in Dr. Skopec's Mental Residual Functional Capacity Assessment of plaintiff, and therefore erroneously ignored probative medical opinion evidence.  (Plaintiff's Motion at 8-9).  This Court concludes that the ALJ did not materially err in his consideration of Dr. Skopec's opinions.

First, although the ALJ in this case ultimately did not discuss every piece of evidence in the record, he was not required to do so.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).  Here, the ALJ's residual functional capacity determination accounted for all significant probative evidence of plaintiff's mental impairments and limitations.  The ALJ stated that he carefully considered "the entire record" and "opinion evidence" in accordance with administration regulations.  (AR 18, 267).  He expressly found that plaintiff's severe impairments included "depressive disorder" and "anxiety disorder."  (AR 16, 266).  In his Pre-Remand Decision (which was incorporated by reference into the Post-Remand Decision), the ALJ observed that plaintiff's medical records revealed no major or significant emotional and/or cognitive deficits, that plaintiff had an "intact" memory with "no complaints of memory problems," that plaintiff's symptoms were stabilized by her medications, and that

---

[12]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

her most recent psychiatric evaluation demonstrated that plaintiff's mental condition was "under excellent control, . . . [requiring no] regular psychiatric treatment." (AR 16-17). In light of this medical evidence, and Dr. Gregg's opinions which are consistent therewith, the ALJ determined that plaintiff had a mental residual functional capacity that precluded her from constant interaction with the general public, but that plaintiff had no other mental limitations. (AR 16-17). In his Post-Remand Decision, the ALJ declined to alter his mental residual functional capacity assessment, noting that plaintiff's condition had actually improved since the Pre-Remand Hearing, that her symptoms continued to be controlled by prescribed medication, and that, other than medication management, plaintiff was receiving no regular mental health services (*e.g.* counseling, psychological testing). (AR 269). The ALJ's residual functional capacity assessment, based in part on Dr. Gregg's opinions, is supported by substantial evidence. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[R]eports of [nonexamining physician] . . . may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

      Second, contrary to plaintiff's suggestion, the ALJ considered Dr. Skopec's opinions and, to the extent he rejected such opinions, did so based on specific evidence in the medical record.[13] The ALJ expressly cited to Dr. Skopec's Mental Residual Functional Capacity form, and acknowledged that Dr. Skopec assessed "additional nonexertional limitations." (AR 269) (citing Exhibit B5F [AR 551-

---

[13] Dr. Skopec's January 30, 2006 assessment, which notes that he "Agree[d] with [the] ALJ['s] decision" suggests that Dr. Skopec believed his opinions were consistent with the ALJ's residual functional capacity assessment in the November 7, 2005 Pre-Remand Decision. (AR 13-19, 553). Consequently, the ALJ was not required to discuss at length such medical opinion evidence which he did not reject and, as Dr. Skopec's notation of agreement suggests, was encompassed by the ALJ's assessment of plaintiff's residual functional capacity. See Howard, 341 F.3d at 1012. An ALJ must provide an explanation only when he rejects "significant probative evidence." Vincent, 739 F.2d at 1394-95 (citation omitted).

54]). The ALJ maintained, however, that the mental residual functional capacity assessment in his Pre-Remand Decision was "fair," especially considering that medical evidence plaintiff submitted in connection with the remand reflected that plaintiff's condition had actually improved. As the ALJ noted, plaintiff's treatment records contained no complaints or objective medical evidence that plaintiff suffered from memory problems, plaintiff's mental status evaluations consistently showed plaintiff to be alert, cooperative and oriented times four, with intact memory, insight and judgment, and plaintiff's medication adequately controlled her symptoms. (AR 16-17, 269). Such evidence refutes Dr. Skopec's moderate limitations on plaintiff's mental activities related to understanding, memory, concentration and persistence. Moreover, the ALJ was not required expressly to address Dr. Skopec's moderate limitations on plaintiff's ability to "accept instructions and respond appropriately to criticism from supervisors," and to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," since Dr. Skopec specifically noted that plaintiff could nonetheless "adapt and relate to co-workers and supervisors." (AR 553). The ALJ could properly rely on Dr. Skopec's narrative interpretation of his findings, rather than the underlying, check-the-box summary conclusions, and resolve any ambiguity between the two. See Lewis, 236 F.3d at 509 (ALJ resolves conflicts and ambiguities in the evidence); Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ must "fully account[] for the context of materials or all parts of the testimony and reports"); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).[14] In short, the ALJ's detailed and exhaustive discussion and evaluation

---

[14]Plaintiff's contention that the ALJ failed to account for plaintiff's inability to interact appropriately with the public is belied by the record. (Plaintiff's Motion at 9). The ALJ's mental residual functional capacity assessment expressly precluded plaintiff from constant interaction with the general public. (AR 267, 269).

of plaintiff's treatment records and the medical opinion evidence adequately supported rejecting Dr. Skopec's opinions.  See Sawyer, 303 Fed. Appx. at 455; cf. Thomas, 278 F.3d at 957 (ALJ can meet burden of rejecting a treating physician's opinion by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes v. Bowen, 881 F.2d 747, 751, 755 (9th Cir. 1989) (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).

In light of the foregoing, a remand or reversal on this basis is not warranted.

### D. The ALJ Properly Determined That Plaintiff Could Perform Her Past Relevant Work

#### 1. Pertinent Law

At step four of the sequential evaluation process, the Administration may deny benefits when the claimant can perform the claimant's past relevant work as "actually performed," or as "generally" performed.  Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).  Although the claimant has the burden of proving an inability to perform her past relevant work, "the ALJ still has a duty to make the requisite factual findings to support his conclusion."  Id. at 844.  To determine whether a claimant has the residual capacity to perform her past relevant work, the ALJ must ascertain the demands of the claimant's former work and then compare the demands with her present capacity.  Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986).  In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain the following specific findings of fact:  (1) a finding of fact as to the individual's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's residual functional capacity would permit a return to his past job or occupation.  SSR 82-62.

### 2.   Analysis

Plaintiff contends that the ALJ erroneously determined that plaintiff was capable of performing her past relevant work. (Plaintiff's Motion at 11-15). Plaintiff appears to argue as follows: (1) the ALJ erroneously excluded from plaintiff's residual functional capacity the moderate nonexertional limitations stated in Dr. Skopec's opinions; (2) the ALJ's residual functional capacity assessment, therefore, failed to reflect all of plaintiff's true limitations; and (3) as a result, the ALJ erroneously concluded at step four that plaintiff could perform her past relevant work, since the reasoning levels required to perform such jobs were above plaintiff's actual abilities. (Plaintiff's Motion at 11-15). The Court concludes that the ALJ's step four determination is free from legal error and supported by substantial evidence.

First, as discussed above, the ALJ's residual functional capacity assessment was supported by substantial evidence, and properly excluded the more restrictive nonexertional limitations contained in Dr. Skopec's opinions.

Second, the ALJ heard testimony from a vocational expert that, consistent with the Dictionary of Occupational Titles ("DOT"),[15] plaintiff's past relevant work included (1) "companion, light/semi-skilled work (SVP 3 - but performed at unskilled level)"; (2) "crew support technician for the railroad, light/semi-skilled (SVP 4)"; (3) "title insurance examiner . . . sedentary, skilled (SVP 7)"; and (4) "title insurance searcher . . . light, skilled (SVP 5)." (AR 249-50, 295-96).

---

[15] ALJs routinely rely on the DOT, in part "[to determine] the skill level of a claimant's past work . . . ." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is source of reliable job information); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (The DOT is the presumptive authority on job classifications.). An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. Massachi, 486 F.3d at 1152-53 (citing SSR 00-4p). Here, the ALJ expressly directed the vocational expert to ensure that her testimony was consistent with the DOT and to advise the ALJ if the vocational expert disagreed with the DOT. (AR 249).

Third, the vocational expert also testified that, in light of the ALJ's residual functional capacity assessment, plaintiff could return to her past relevant work. (AR 250-51). The ALJ expressly relied upon the testimony of the vocational expert in reaching his conclusion at step four. (AR 17-18). Such testimony constitutes substantial evidence upon which an ALJ may properly rely. See Magallanes, 881 F.2d at 756-57.

The ALJ's decision contains the requisite findings as to plaintiff's residual functional capacity, the physical demands of plaintiff's past work, and plaintiff's ability to return to such work, and is supported by substantial evidence. Accordingly, a remand or reversal on this basis is not warranted.[16]

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 25, 2010

                                                    /s/
                                   Honorable Jacqueline Chooljian
                                   UNITED STATES MAGISTRATE JUDGE

---

[16] Plaintiff contends that the ALJ expressly adopted Dr. Skopec's opinions in the Post-Remand Decision, and therefore erred by excluding "the significant moderate impairments" from the state agency doctor's opinions in plaintiff's residual functional capacity. (Plaintiff's Motion at 14). Plaintiff misreads the ALJ's decision, which adopts Dr. Skopec's opinions only "with regard to the part B criteria" at step three. (AR 266). Indeed, the ALJ stressed that his analysis under paragraph B was not a residual functional capacity assessment: "The limitations identified in the 'paragraph B' and 'paragraph C' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (AR 267).